UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
VICINAGE OF NEWARK

---

MUSTAFA BOSTANCI,                      )
                                       )
          Plaintiff,                   )    CIVIL ACTION NO:
                                       )    08-4339 (SRC-MAS)
      v.                               )
                                       )
NEW JERSEY CITY UNIVERSITY,)
                                       )
          Defendant.                   )

---

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT PURSUANT TO FED. R. CIV. P. 56**

---

PAULA T. DOW
ATTORNEY GENERAL OF NEW JERSEY
R.J. Hughes Justice Complex
25 Market Street
P.O. Box 112
Trenton, New Jersey 08625
Attorney for Defendant
  New Jersey City University

By: Ryan C. Atkinson
    Deputy Attorney General
    (609) 943-3112
    Ryan.Atkinson@dol.lps.state.nj.us

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . ii

STATEMENT OF FACTS AND PROCEDURAL HISTORY.. . . . . . . . . . . . 1

LEGAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . 5

STANDARD OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . 5

    POINT I

        PLAINTIFF'S AGE DISCRIMINATION IN EMPLOYMENT
        ACT AND NEW JERSEY LAW AGAINST DISCRIMINATION
        CLAIMS SHOULD BE DISMISSED AS NEW JERSEY CITY
        UNIVERSITY IS AN ARM OF THE STATE AND THE
        CLAIMS ARE BARRED BY SOVEREIGN IMMUNITY
        PURSUANT TO THE ELEVENTH AMENDMENT. . . . . . . . . . 6

    POINT II

        PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED
        PURSUANT TO THE ROOKER-FELDMAN DOCTRINE
        BECAUSE PLAINTIFF REQUESTED RELIEF WOULD
        REVERSE THE DECISION OF THE SUPERIOR COURT OF
        NEW JERSEY APPELLATE DIVISION OR VOID ITS
        RULING. . . . . . . . . . . . . . . . . . . . . . . 18

    POINT III

        PLAINTIFF'S ADEA AND NJLAD CLAIMS SHOULD BE
        DISMISSED WITH PREJUDICE BECAUSE THEY ARE
        BARRED BY ISSUE PRECLUSION. . . . . . . . . . . . . 21

    POINT IV

        PLAINTIFF'S NEW JERSEY LAW AGAINST
        DISCRIMINATION CLAIMS SHOULD BE DISMISSED
        BECAUSE THEY ARE STATUTORILY BARRED BY THE
        DCR'S DETERMINATION IN THIS MATTER. . . . . . . . . 22

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . 24

i

## TABLE OF AUTHORITIES

### CASES

Anderson v. Liberty, Inc., 477 U.S. 242 (1986) . . . . . . . . .6

Benn v. First Judicial Dist. of Pa., 426 F.3d
   (3d Cir. 2005). . . . . . . . . . . . . . . . . . . . . 11

Bennett v. City of Atlantic, 288 F. Supp. 2d 675
   (D.N.J. 2003). . . . . . . . . . . . . . . . . . . . . 9

Bowers v. National Collegiate Athletic Ass'n,
   475 F.3d 524  (3d Cir. 2007). . . . . . . . . . . . . . 11

Celotex Corp.  v. Catrett, 477 U.S. 371 (1986). . . . . . . . . 5

Centifanti v. Nix, 865 F.2d 1422 (3d Cir. 1989). . . . . . . . 19

Chippollini v. Spencer Gifts, 814 F.2d 893
   (3d Cir. 1987). . . . . . . . . . . . . . . . . . . . . 5

Chugh v. W. Inventory Serv., 333 F. Supp. 2d 285
   (D.N.J. 2004). . . . . . . . . . . . . . . . . . . . . 23

Desi's Pizza, Inc. v. City of Wilkes-Barre,
   321 F.3d 411(3d Cir. 2003). . . . . . . . . . . . . . . 20

District of Columbia Court of Appeals v. Feldman,
   460 U.S. 462 (1983). . . . . . . . . . . . . . . . . . 18

Equimark Commercial Financial Co. v. C.I.T. Financial
   Services Corp., 812 F.2d 141(3d Cir. 1987). . . . . . . . 5, 6

Fireman's Ins. Co. of Newark v. De Fresne, 676 F.2d 965
   (3d Cir. 1982). . . . . . . . . . . . . . . . . . . . . 5

Fitchik v. N.J. Transit Rail Operations, Inc.,
   873 F.2d 655 (3d Cir. 1989). . . . . . . . . . 9-13, 15, 17, 18

FOCUS v. Allegheny County Court of Common Pleas, 75 F.3d 834
   (3d Cir. 1996) . . . . . . . . . . . . . . . . . . . . 18

Garcia v. The Richard Stockton College of New Jersey,
   210 F. Supp. 2d 545 (D.N.J. 2002). . . . . . . . . . . . 11

Hilliard v. New Jersey Army Nat'l Guard, 527 F. Supp.
   405 (D.N.J. 1981). . . . . . . . . . . . . . . . . . . . 9

Hishon v. King & Spalding, 467 U.S. 69,
    81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984). . . . . . . . . . . 7

In re Kahr Bros., Inc., 5 B.R. 765 (D.N.J. 1980) . . . . . . . 8

Kimel v. Florida Bd. of Regents, 528 U.S. 62 (2000). . . . . 6, 7

Kovats v. Rutgers, The State University,
    822 F.2d 1303 (3d Cir. 1987). . . . . . . . . . . . . . . 15

Lang v. New York Life Ins. Co., 721 F.2d 118
    (3d Cir. 1983). . . . . . . . . . . . . . . . . . . . . . 5

Marran v. Marran, 376 F.3d 143 (3d Cir. 2004). . . . . . . . 20

Martinez v. Bethlehem Steel Corp., 496
    F. Supp. 1002 (E.D. Pa. 1979). . . . . . . . . . . . . . . 6

McNeil v. McDonough, 515 F. Supp. 113 (D.N.J. 1980). . . . . . 9

Parkview Ass'n P'ship v. City of Lebanon, 225 F.3d 321
    (3d Cir. 2000). . . . . . . . . . . . . . . . . . . . 19, 20

Pennhurst State School and Hospital v. Halderman,
    465 U.S. 89, 104 S.Ct. 900 (1984). . . . . . . . . . . . . 8

Pittman v. LaFontaine, 756 F. Supp. 834
    (D.N.J. 1991). . . . . . . . . . . . . . . . . . . . 20, 21

Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923). . . . . 18, 19

Rudolph v. Adamar of N.J., Inc., 153 F. Supp. 2d 528
    (D.N.J. 2001). . . . . . . . . . . . . . . . . . . . . . 9

Ryans v. New Jersey Comm'n for the Blind and Visually
    Impaired, 542 F. Supp. 841 (D.N.J. 1982). . . . . . . . . 10

Skehan v. Board of Trustees of Bloomsburg State College,
    590 F.2d 470 (3d Cir. 1978), cert. denied. . . . . . . . . . 8

State Treasury. Edelman v. Jordan, 415 U.S. 651
    (1974). . . . . . . . . . . . . . . . . . . . . . . . . . 8,9

United States Supreme Court. Exxon Mobil Corp. v. Saudi Basic
    Indus. Corp., 544 U.S. 280 (2005). . . . . . . . . . . 19, 20

Urbano v. Board of Managers, 415 F.2d 247 (3d Cir. 1969). . . 11

Whiteford v. Reed, 155 F.3d 671 (3d Cir. 1998). . . . . . . . 18

## **STATUTES**

28 U.S.C. § 1257. . . . . . . . . . . . . . . . . . . . . . . . 19

28 U.S.C. § 1738. . . . . . . . . . . . . . . . . . . . . . . . 21

42 U.S.C. § 2000e.. . . . . . . . . . . . . . . . . . . . . . . 1

29 U.S.C. § 621 . . . . . . . . . . . . . . . . . . . . . 1, 10

N.J. Stat. Ann.§ 10:5-1 . . . . . . . . . . . . . . . . .1, 10

N.J. Stat. Ann.§ 59:1-1 . . . . . . . . . . . . . . . . 12, 13

N.J. Stat. Ann.§ 18A: 3B-2 . . . . . . . . . . . . . . . . 12

N.J. Stat. Ann.§ 18A:64-18 . . . . . . . . . . . . . . . . 13

N.J. Stat. Ann.§ 18A:65-8 . . . . . . . . . . . . . . . . 14

N.J. Stat. Ann.§ 18A:3B-1 . . . . . . . . . . . . . . . . 14

N.J. Stat. Ann.§ 18A:64-1 . . . . . . . . . . . . . . . . 14

N.J. Stat. Ann.§ 18A:3B-27 . . . . . . . . . . . . . . . . 19

N.J. Stat. Ann.§ 54:4-3.3 . . . . . . . . . . . . . . . . 15

N.J. Stat. Ann.§ 54:32 B-1(I)(1)(C) . . . . . . . . . . . . 15

N.J. Stat. Ann.§ 18A: 64-2-3 . . . . . . . . . . . . . . . 15

N.J. Stat. Ann.§ 64:21.1 . . . . . . . . . . . . . . . . . 16

N.J. Stat. Ann.§ 64:-6(I) . . . . . . . . . . . . . . . . 16

N.J. Stat. Ann.§ 52:14B-1 . . . . . . . . . . . . . . . . 16

N.J. Stat. Ann.§ 18A: 3B-6(f). . . . . . . . . . . . . . . 16

N.J. Stat. Ann.§ 18A: 64-6(f) . . . . . . . . . . . . . . 16

N.J. Stat. Ann.§ 10:5-27 . . . . . . . . . . . . . . . . . 23

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

On August 29, 2008, Mustafa Bostanci (hereinafter "plaintiff") filed a complaint asserting eight (8) counts of discharge, retaliation and harassment in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), and the New Jersey Law Against Discrimination N.J. Stat. Ann. § 10:5-1 et seq. ("NJLAD") against New Jersey City University (hereinafter "defendant"). (See Cert. Ex. 1.)

On March 5, 2009 defendant filed a motion for extension of time to answer, move or otherwise reply to plaintiff's complaint on behalf of defendant. On May 5, 2009 defendant's motion for an extension of time to answer, move or otherwise reply was granted. On May 11, 2009 defendant filed a motion to dismiss plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6). On August 11, 2009 the Hon. Stanley R. Chesler, U.S.D.J., entered an Order granting in part and denying in part defendant's motion to dismiss plaintiff's complaint. The Court dismissed plaintiff's Title VII claims but declined to dismiss the ADEA and NJLAD claims as the Court opined that defendant had failed to sufficiently brief the issue of whether defendant is an arm of the State of New Jersey for Eleventh Amendment purposes.(See Cert. Ex. 2).

Thereafter, the matter was twice transferred and due to the press of business and multiple case transfers the defendant

1

inadvertently failed to file its Answer. Promptly upon realizing this oversight the defendant petitioned the Court for an extension of time to answer, move or otherwise reply arguing that the plaintiff was not prejudiced and that defendant had a good faith basis for requesting the extension as it had now secured an Affidavit from New Jersey City University's Vice President for Administration and Finance supporting its argument for sovereign immunity. (See Cert. Ex. 3). On June 21, 2010 the Hon. Michael A. Shipp, U.S.M.J., entered an Order granting defendant additional time to answer, move or otherwise reply to plaintiff's complaint. (See Cert. Ex. 4).

Plaintiff's remaining claims are brought pursuant to the ADEA and NJLAD. A review of New Jersey City University's status, funding and degree of autonomy present sufficient evidence to show that it is an arm of the State of New Jersey. As the State of New Jersey is the real party in interest, New Jersey City University is entitled to sovereign immunity. For the foregoing reasons, it is respectfully requested that plaintiff's ADEA and NJLAD claims be dismissed with prejudice on sovereign immunity grounds.

Moreover, as these matters have been adjudicated at the State level, this court lacks subject matter jurisdiction pursuant to the Rooker-Feldman doctrine. The New Jersey Division on Civil Rights (hereinafter "DCR") along with the Superior Court of New Jersey - Appellate Division have previously rendered  decisions on

the matters set forth in plaintiff's complaint.

Plaintiff's complaint is also barred by issue preclusion and is statutorily barred. On May 23, 2007, plaintiff filed a verified complaint against the University with the DCR. (<u>See</u> Cert. Ex. 5). That complaint is identical to the complaint filed in this matter. (<u>See</u> Cert. Exs. 1 & 5). After an investigation, DCR determined that there was no probable cause to sustain plaintiff's age discrimination and retaliation claims.(<u>See</u> Cert. Ex. 6). He appealed this determination to the Superior Court of New Jersey - Appellate Division. The Superior Court of New Jersey - Appellate Division affirmed the DCR determination. (<u>See</u> Cert. Ex. 7).

The facts of this case, as set forth by the Superior Court of New Jersey - Appellate Division, are as follows: plaintiff was born on October 31, 1965. He was hired by the University in July 2001 as a computer specialist. Plaintiff's supervisor, Ritu Shastari, perceived problems with his work performance. As a result, he received unsatisfactory performance evaluations from 2002 through 2006 and he was disciplined in March 2006 and September 2006. (<u>See</u> Cert. Ex. 7).

Plaintiff claims that on three (3) occasions between December 2006 and March 2007, Shastari told him that he was "too old." These allegations were not substantiated by DCR's investigation. Instead, DCR was advised by fellow workers that plaintiff had loud disagreements with management. Plaintiff also

3

claims that Shastari circulated an email throughout the office on March 28, 2007, that criticized his work performance. Plaintiff complained about the memo to Phyllis Szani, another supervisor. Szani called a meeting in her office with plaintiff, Shastari, and another employee present.  According to the findings of the DCR investigator, plaintiff refused to leave the office when asked, forcing Szani to call campus security. (See Cert. Ex. 7).

Plaintiff was suspended for his actions in Szani's office. After his suspension, plaintiff filed an internal complaint with the affirmative action office, but did not allege age discrimination; he merely cited personal problems with Shastari. Following a disciplinary hearing on May 8, 2007, plaintiff was terminated. He subsequently filed a complaint of age discrimination with the DCR. An investigation was conducted that included a review of the pertinent workplace emails and records and interviews with at least eight (8) individuals from the University. The investigation revealed no substantiation of plaintiff's claims. In contrast, the investigation revealed that there were three (3) fellow employees within the department who were older than plaintiff who all stated that they had not been subjected to age discrimination, nor had they witnessed it. Accordingly, a determination of no probable cause was made by the DCR. Plaintiff appealed the determination to the Superior Court of New Jersey - Appellate Division.  On April 13, 2009, the Superior Court of New

4

Jersey - Appellate Division affirmed the DCR's determination of no probable cause. (See Cert. Ex. 7). As plaintiff's claims have been adjudicated they are barred by issue preclusion as well being statutorily barred.

## LEGAL ARGUMENT

### STANDARD OF REVIEW

Motions for summary judgment pursuant to Fed. R. Civ. P. 56 should be granted if, after reviewing the record and inferences of fact therefrom in a light most favorable to the non-moving party, it can be concluded that there is no genuine issue of material fact to be litigated and the movant is entitled to judgment as a matter of law. Lang v. New York Life Ins. Co., 721 F.2d 118, 119 (3d Cir. 1983). In regard to such a motion, the burden is on the moving party to demonstrate the absence of a genuine issue of material fact. Equimark Commercial Financial Co. v. C.I.T. Financial Services Corp., 812 F.2d 141, 144 (3d Cir. 1987) (citing Celotex Corp. v. Catrett, 477 U.S. 371, 373 (1986), cert. dismissed, 483 U.S. 1052 (1987). The movant need only establish that, based on the record, the evidence proffered by the non-movant is insufficient to carry his burden of proof at trial. Chippollini v. Spencer Gifts, 814 F.2d 893, 896 (3d Cir. 1987) (citing Celotex, supra, at 323). Furthermore, in opposing a summary judgment motion, the non-movant may not rest his case on the bare allegations of his pleading. Fireman's Ins. Co. of Newark v. De

5

Fresne, 676 F.2d 965, 969 (3d Cir. 1982). Rather, he must present "specific facts showing that there is a genuine issue for trial." Martinez v. Bethlehem Steel Corp., 496 F. Supp. 1002, 1004 (E.D. Pa. 1979), aff'd, 633 F.2d 965, 969 (3d Cir. 1980). A genuine issue exists only if the evidence proffered by the non-movant party is such that a reasonable fact finder could find for that party. Equimark, 812 F.2d at 144 (citing Anderson v. Liberty, Inc., 477 U.S. 242 (1986)).

**I.      PLAINTIFF'S AGE DISCRIMINATION IN EMPLOYMENT ACT AND NEW JERSEY LAW AGAINST DISCRIMINATION CLAIMS SHOULD BE DISMISSED AS NEW JERSEY CITY UNIVERSITY IS AN ARM OF THE STATE AND THE CLAIMS ARE BARRED BY SOVEREIGN IMMUNITY PURSUANT TO THE ELEVENTH AMENDMENT.**

Plaintiff has asserted an age discrimination claim pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq., along with claims that defendant violated the New Jersey Law Against Discrimination, N.J. Stat. Ann. § 10:5-1 et seq. Plaintiff's claims are barred by the doctrine of sovereign immunity because New Jersey City University is a State entity. Non-consenting States are not subject to federal jurisdiction over suits against them unless Congress has validly abrogated their Eleventh Amendment immunity from suit. Moreover, the Supreme Court has held that the ADEA does not abrogate the State's sovereign immunity. Kimel v. Florida Bd. of Regents, 528 U.S. 62, 73 (2000). Congress' attempt to abrogate the States' immunity under the ADEA exceeded its authority under the Fourteenth Amendment; therefore,

it was not a valid exercise of authority and was held invalid by the Supreme Court. Kimel, 528 U.S. at 66. Accordingly, a State is not subject to suit in federal court from a private individual pursuant to the ADEA under the doctrine of sovereign immunity. Id.

The Eleventh Amendment to the United States Constitution provides:

> "the judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign State."

Thus, the grant of judicial authority in Article III of the Constitution is limited by this notion of sovereign immunity.

The Eleventh Amendment precludes suit in federal court by any party seeking to recover money damages from the State Treasury. Edelman v. Jordan, 415 U.S. 651, 653 (1974). The principle of sovereign immunity as exemplified in the Eleventh Amendment is firmly established. The notion that a State may not be sued without its consent:

> "is a fundamental rule of jurisprudence having so important a bearing upon the construction of the Constitution of the United States that it has become established by repeated decisions of this Court that the entire judicial power granted by the Constitution does not embrace authority to entertain a suit brought by private parties against the State without consent given: not one brought by citizens of another State, or by citizens or the subject of a foreign State, because of the Eleventh Amendment; and not even one brought by its own citizens, because of the

7

> fundamental rule of which the amendment is but
> an exemplification."

Ex Parte State of New York No. 1, 256 U.S. 490, 497 (1921).

Although sovereign immunity may be waived, the Supreme Court has consistently held that such a waiver must be unequivocally expressed. Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 104 S.Ct. 900 (1984); Edelman v. Jordan, 415 U.S. 651, 673 (1974). The Supreme Court has further held that absent an express waiver of immunity a State may not be sued in the federal courts. Edelman v. Jordan, 415 U.S. at 673.

The State of New Jersey has never waived its sovereign immunity in the federal courts. The passage by the New Jersey Legislature of the New Jersey Tort Claims Act, N.J. Stat. Ann. § 59:1-1 et seq., re-established the doctrine of sovereign immunity unless liability was specifically provided for under the Act. As noted by the Third Circuit, although a State statute may waive sovereign immunity in the State's own courts, such a statute does not necessarily operate to waive the State's Eleventh Amendment immunity. Skehan v. Board of Trustees of Bloomsburg State College, 590 F.2d 470, 487 (3d Cir. 1978), cert. denied, 440 U.S. 832 (1979). Indeed, it has been determined that the State of New Jersey has not, by enacting the New Jersey Tort Claims Act, waived its Eleventh Amendment immunity. In re Kahr Bros., Inc., 5 B.R. 765 (D.N.J. 1980).

The federal courts in New Jersey have uniformly

recognized that suits against the State can only be brought in State court. <u>McNeil v. McDonough</u>, 515 F. Supp. 113, 122 (D.N.J. 1980), <u>aff'd</u>. 648 F.2d 1252 (3d Cir. 1972); <u>Ritchie v. Cahall</u>, <u>supra</u>; <u>In re Kahr Bros., Inc.</u>, 5 B.R. 765 (D.N.J. 1980); <u>Hilliard v. New Jersey Army Nat'l Guard</u>, 527 F. Supp. 405 (D.N.J. 1981); <u>Ryans v. New Jersey Comm'n for the Blind and Visually Impaired</u>, 542 F. Supp. 841 (D.N.J. 1982).

An agency of the State is entitled to immunity from suit for money damages in federal court. <u>Fitchik v. N.J. Transit Rail Operations, Inc.</u>, 873 F.2d 655, 658 (3d Cir. 1989)(holding that a "State agency is entitled to same Eleventh Amendment immunity as State when State is the real party in interest"). Furthermore, a plaintiff cannot bring a claim under the New Jersey Law Against Discrimination in the federal courts as the New Jersey Law Against Discrimination did not expressly waive the State's immunity. <u>Bennett v. City of Atlantic</u>, 288 F. Supp 2d 675, 683 (D.N.J. 2003)(holding that the NJLAD does not contain the express language required to waive the State's immunity from suit in federal court). <u>See also</u>, <u>Rudolph v. Adamar of N.J., Inc.</u>, 153 F. Supp. 2d 528, 540-44 (D.N.J. 2001)(noting that nothing in the text of the NJLAD "addresses, much less expressly waives, the State's Eleventh Amendment immunity" and further noting that the New Jersey Tort Claims Act, N.J. Stat. Ann. § 59:1-1 <u>et</u> <u>seq.</u>, expressly reserves State immunity in its "legislative and executive capacities").

In <u>Garcia v. The Richard Stockton College of New Jersey</u>, 210 F. Supp. 2d 545 (D.N.J. 2002), this court addressed the issue of whether, in light of the Eleventh Amendment, the State of New Jersey and its alter egos may be sued in federal court under the NJLAD. The court held that the answer was plain that they may not and accordingly, the court dismissed plaintiff's NJLAD claims against the State and its alter egos on ground of lack of subject matter jurisdiction. <u>Id.</u> at 547.

The Eleventh Amendment precludes suit in federal court against the State and New Jersey has not waived its sovereign immunity, nor does the NJLAD contain the express language to do the same. As New Jersey City University is an entity of the State, New Jersey City University is immune from suit. The Eleventh Amendment provides immunity even where the State is not named a party if the State is considered to be the real party in the action. <u>Fitchik v. New Jersey Transit Rail Operations</u>, 873 F.2d 655, 659 (3d. Cir. 1989). The Court in <u>Fitchik</u> articulated three factors to be considered in determining whether an entity is entitled to sovereign immunity:

> (1) Whether the money that would pay the judgment would come from the State (this includes three of the <u>Urbano</u> factors-whether payment would come from the State's treasury, whether the agency has the money to satisfy the judgement and whether the sovereign has immunized itself from responsibility for the agency's debts);
>
> (2) The status of the agency under State law;

10

(3) What degree of autonomy the agency has.

See also Urbano v. Board of Managers, 415 F.2d 247 (3d Cir. 1969).

In determining which factor should carry the most weight in its analysis, the Third Circuit has held:

> "In the past, we have afforded some prominence to the first factor, the so-called "funding prong," i.e., whether payment comes from the State treasury. Fitchik, 873 F.2d at 659 ("Although no single Urbano factor is dispositive, the most important is whether any judgment would be paid from the State Treasury.")(citing Urbano v. Bd. of Managers, 415 F.2d 247 (3d Cir.1969)). More recently, however, in Benn v. First Judicial Dist. of Pa., 426 F.3d 233 (3d Cir. 2005), we held that, "we can no longer ascribe primacy to the first factor," concluding that it was relegated "to the status of one factor co-equal with others in the immunity analysis." Id. at 239-40." Bowers v. National Collegiate Athletic Ass'n, 475 F.3d 524 (3d Cir. 2007).

The first factors to be considered in determining whether an entity is entitled to sovereign immunity concern funding and the court must determine:

> (1) Whether the money that would pay the judgment would come from the State (this includes three of the Urbano factors-whether payment would come from the State's treasury, whether the agency has the money to satisfy the judgement and whether the sovereign has immunized itself from responsibility for the agency's debts). Fitchik, 873 F.2d at 659.

The funding factors weigh in favor of immunity as any judgement rendered against New Jersey City University would be paid either from New Jersey City University's State appropriation or

11

directly by the State Treasury through the State Tort Claims Fund, depending upon the exact nature of the judgment. Furthermore, New Jersey City University has set aside no funds to meet its liabilities for damages or claims such as those asserted by plaintiff. (<u>See</u> Cert. Ex. 3 at ¶¶ 13, 14).

In the fiscal year 2010, New Jersey City University is budgeted to receive 36% of its general revenue from the State of New Jersey through State appropriation. Per the FY 2010 budget approved by the Board of Trustees on September 14, 2009, the general revenues of the University were $134,892,835. Of that amount, the University budgeted $49,177,000 in base State appropriation and fringe benefits.(<u>See</u> Cert. Ex. 3 at ¶ 12).

New Jersey City University's budget and operational costs are supported primarily from appropriations provided by the State Legislature and from tuition and fees set by the Board of Trustees of the University. Tuition and fees, and State and Federal funds accepted by the University are required to be used in support of the University's higher education programs in furtherance of the State legislative mandate to achieve statewide goals of affordability and accessibility for all students, institutional excellence, and effectiveness in addressing the societal and economic needs of the State. N.J. Stat. Ann. § 18A:3B-2.(<u>See</u> Cert. Ex. 3 at ¶ 9).

As New Jersey City University receives a significant amount of its funding (36%) from State appropriations and the

12

tuition, fees, State and Federal funds received are required by statute to be utilized in furtherance of the State's legislative mandate, any judgment would undoubtedly come from the State. Furthermore any revenues from student parking, food services, student union buildings, parking facilities and any other facilities financed by student fees, not pledged to repayment of bonds issued by the N.J. Educational Facilities Authority, are required by statute to be retained in a separate account and dedicated to the "cost of operation, maintenance and rental of such facilities in subsequent years." N.J. Stat. Ann. § 18A:64-18. (<u>See</u> Cert. Ex 3 at ¶¶ 9, 10).

The funds received by New Jersey City University are subject to State control whether from public or private funds. As New Jersey City University is required by statute to utilize the aforementioned funds for specific purposes, any judgment could not be satisfied from the same. As such, defendant does not have the ability to satisfy a judgment from these funds and any judgment in this matter would in fact come from the State of New Jersey.

The last funding factor the courts look to when deciding whether an entity is entitled to sovereign immunity is whether the sovereign has immunized itself from the responsibility for the agency's debts. While there are explicit statutes demonstrating that the State has immunized itself from the responsibility for the agency's and/or University's debts, no such statute as to New Jersey

City University exists. See Kovats v. Rutgers, The State University, 822 F.2d 1303, 1310-11 (3d Cir. 1987)("The State has immunized itself from liability on judgments entered against Rutgers", citing, N.J. Stat. Ann. § 18A:65-8).

New Jersey City University has set aside no funds to meet its liabilities for damages or claims, such as those asserted by plaintiff, as such it would not have the funds to satisfy a judgment. As the State has not explicitly immunized itself from liability, any judgment would ultimately come from the State of New Jersey. Thereby, the first factors with respect to funding weigh in favor of immunity.

The second set of factors courts must look to is the status of the agency under State law.  This includes four factors: how the State treats the agency generally, whether the entity is separately incorporated, whether the agency can sue and be sued in its own right, and whether it is immune from State taxation. Fitchik, 873 F.2d at 659.

The first status factor weighs in favor of immunity as the State views New Jersey City University as an arm of the State as it is a public institution of higher education of the State of New Jersey, organized exclusively for educational purposes, established and named pursuant to N.J. Stat. Ann. §§ 18A:3B-1 et seq., and 18A: 64-1 et seq. (See Cert. Ex 3 at ¶ 2). Also, New Jersey City University is a State agency allocated to the Department of State,

14

an executive branch agency of the State of New Jersey, pursuant to N.J. Stat. Ann. § 18A:3B-27. (See Cert. Ex 3 at ¶ 3).

The second and third factors with respect to status are satisfied as New Jersey City University has not been granted the authority to "sue and be sued" under State statute nor has it been separately incorporated under State law. (See Cert. Ex 3 at ¶ 3).

Last, New Jersey City University is exempt from real property taxes and sales and use taxes to the same extent as any other agency of the State of New Jersey. N.J. Stat. Ann. §§ 54:4-3.3 and 54:32B-1(I)(1)(C). As well, New Jersey City University is exempt from federal income tax pursuant to §115 of the Internal Revenue Code.(See Cert. Ex 3 at ¶¶ 7, 8).

New Jersey City University is viewed as an alter ego of the State and is treated as such. On balance, the "status under state law" factors tilt in favor of granting immunity.

The third set of factors requires a court to determine the degree of autonomy afforded to the agency claiming immunity. Fitchik, 873 F.2d at 659.

New Jersey City University is governed by a Board of Trustees, whose members are Special State Officers of the State of New Jersey, appointed by the Governor with the advice and consent of the New Jersey State Senate. Any member of the Board of Trustees may be removed by the Governor for cause upon notice and opportunity to be heard. N.J. Stat. Ann. § 18A:64-2, & -3. The Governor of the

15

State of New Jersey functions as the public employer on behalf of New Jersey City University and its sister State colleges, under the New Jersey Employer-Employee Relations Act. N.J. Stat. Ann. § 64-21.1. (See Cert. Ex 3 at ¶¶ 4, 6). Moreover, while the State has granted certain powers to the Board to act independently, these powers are still constrained by statute. For example, the Board is permitted to enter into contracts, but at the same time the power to enter into contracts is regulated pursuant to the State College Contracts Law. (See Cert. Ex 3 at ¶ 5).

Furthermore, it employees are classified employees pursuant to Title 11A of the Civil Service Act. N.J. Stat. Ann. §§ 18A:64-6(I) and 18A:64-21.2. Its employees are also afforded tenure under the State and County College Tenure Act. N.J. Stat. Ann. § 18A:60-6.(See Cert. Ex. 3 at ¶ 6). University hearings in controversies and disputes involving higher education are governed by the Administrative Procedure Act, N.J. Stat. Ann. § 52:14B-1 et seq., and final administrative decisions are appealed directly to the Superior Court of New Jersey Appellate Division. N.J. Stat. Ann. § 18A:3B-6(f). (See Cert. Ex. 3 at ¶ 3).

While New Jersey City University through its appointed Board of Trustees is vested with certain powers and is able to disburse certain monies appropriated by the Legislature, all accounts of the University are subject to audit by the State of New Jersey at anytime. N.J. Stat. Ann. § 18A:64-6f.(See Cert. Ex. 3 at

16

¶ 11).

The degree of autonomy afforded to the University is controlled by statute with oversight by the Governor, Legislature and the State itself. The University is granted enough autonomy to operate in a manner that permits it to fulfill the public purpose for which it was organized, but the degree of autonomy is minimal at best. Moreover, as in Fitchik, the control by the Governor is fairly substantial which counsels in favor of immunity. Fitchik, 873 F.2d at 664.

New Jersey City University has limited autonomy and there is significant oversight by the State. The autonomy factor counsels in favor of according the defendant immunity.

In determining if an entity is in fact an arm of the State, the court must review its funding, status under State law and the degree of autonomy afforded to the entity. Based on the above factors, New Jersey City University has clearly demonstrated that it is an arm of the State. Thereby, plaintiff's ADEA claims are not viable and as New Jersey City University has not consented to suit, and is not subject to suit in federal court, the ADEA claim should be dismissed with prejudice on sovereign immunity grounds.

Furthermore, as the NJLAD has not expressly waived sovereign immunity and as New Jersey City University has met the requirements affording it immunity, plaintiff's NJLAD claims in federal court are barred.

17

**II.   PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED
       PURSUANT TO THE ROOKER–FELDMAN DOCTRINE BECAUSE
       PLAINTIFF'S REQUESTED RELIEF WOULD REVERSE THE
       DECISION OF THE SUPERIOR COURT OF NEW JERSEY
       APPELLATE DIVISION OR VOID ITS RULING.**

Plaintiff's claims are barred by the Rooker-Feldman doctrine, which prohibits appeals from unfavorable state court results to a lower-level federal court. Under the Rooker-Feldman doctrine, a district court lacks subject matter jurisdiction if the relief requested effectively would reverse a state court decision or void its ruling. Whiteford v. Reed, 155 F.3d 671, 674 (3d Cir. 1998)(citing FOCUS v. Allegheny County Court of Common Pleas, 75 F.3d 834, 840 (3d Cir. 1996)). The doctrine, distilled from Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983), interprets 28 U.S.C. § 1257 as vesting subject-matter jurisdiction to hear appeals from state court judgments solely with the United States Supreme Court. Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 291-92 (2005).

The Rooker-Feldman doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the District Court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil, 544 U.S. at 284. The Third Circuit has explained the jurisdictional bar as precluding lower federal court jurisdiction over claims that were actually litigated or those

18

"inextricably intertwined" with adjudication by a state court.
Parkview Ass'n P'ship v. City of Lebanon, 225 F.3d 321, 325 (3d Cir.
2000). "[A] federal action is inextricably intertwined with a state
adjudication, and thus barred in federal court under Feldman,
'[w]here federal relief can only be predicated upon a conviction
that the state court was wrong.'" Id. (quoting Centifanti v. Nix,
865 F.2d 1422, 1430 (3d Cir. 1989). See also Exxon Mobil, 544 U.S.
at 293 (federal court is divested of jurisdiction under Rooker-
Feldman only where it is asked to redress injuries caused by an
unfavorable state-court judgment).

Importantly, if a plaintiff's claim in federal court is
inextricably intertwined with a previous state court adjudication,
the district court lacks jurisdiction over the claim even if it was
not specifically raised in the state court. Id. at 327. Instead of
filing a new lawsuit in district court, "[A] party's recourse for
an adverse decision in state court is an appeal to the appropriate
state appellate court, and ultimately to the United States Supreme
Court under § 1257...." Parkview Ass'n P'ship, 225 F.3d at 324.

The Third Circuit has set forth the formulation of the
Rooker-Feldman doctrine as follows:

> [A] claim is barred by Rooker-Feldman under
> two circumstances: first, if the claim was
> actually litigated in state court prior to the
> filing of the federal action or, second, if
> the claim is inextricably intertwined with
> [the] state adjudication, meaning that federal
> relief can only be predicated upon a
> conviction that the state court was wrong. A

19

> finding that <u>Rooker-Feldman</u> bars a litigant's
> federal claims divests a District Court of
> subject matter jurisdiction over those claims.

<u>Desi's Pizza, Inc. v. City of Wilkes-Barre</u>, 321 F.3d 411, 419 (3d

Cir. 2003).

Thus, under the second prong, the <u>Rooker-Feldman</u> doctrine

applies not only when claims have been actually litigated in state

court but also if the claim is inextricably intertwined with the

state adjudication, meaning that federal relief can only be

predicated upon a conviction that the state court was wrong. The

Third Circuit has explained that "[a] claim is inextricably

intertwined with the state court adjudication when 'federal relief

can only be predicated upon a conviction that the state court was

wrong.'" <u>Marran v. Marran</u>, 376 F.3d 143, 150 (3d Cir. 2004) (quoting

<u>Parkview Assocs. v. City of Lebanon</u>, 225 F.3d 321,"[A]

constitutional claim is only barred if finding merit in the claim

would require a finding that the state court was wrong"

In this case plaintiff is essentially challenging the

final determination of a state administrative agency and the

decision of the Superior Court of New Jersey - Appellate Division.

(<u>See</u> Cert. Exs. 1, 5 & 7.). As set forth by the Third Circuit in

<u>Desi's Pizza Inc.</u>, plaintiff's complaint falls squarely within the

second prong in that it is inextricably intertwined with the state

court adjudication, meaning that federal relief can only be

predicated upon a conviction that the state court was wrong.

Moreover, plaintiff's complaint exceeds the bounds of the court's meaning of inextricably intertwined as it is identical to the complaint adjudicated below. It is evident from an examination of the complaints presented to the DCR and the Superior Court of New Jersey - Appellate Division that the federal complaint is essentially a rehashing of the same allegations.

Plaintiff's complaint is not within the subject matter jurisdiction of the district court and therefore should be dismissed.

**III.   PLAINTIFF'S ADEA AND NJLAD CLAIMS SHOULD BE DISMISSED WITH PREJUDICE BECAUSE THEY ARE BARRED BY ISSUE PRECLUSION.**

Plaintiff is barred by issue preclusion from litigating these claims. Plaintiff previously received an adverse determination on his NJLAD claim from the DCR and that determination was affirmed on appeal by the Superior Court of New Jersey - Appellate Division. (See Cert. Exs. 5 & 7). Federal courts are required to give preclusive effect to a judicially reviewed determination of the DCR under the full faith and credit clause of 28 U.S.C. § 1738. Pittman v. LaFontaine, 756 F. Supp. 834, 844-47 (D.N.J. 1991). Section 1738 requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in that state's courts. Id. at 844.   Under New Jersey law, issue preclusion "requires substantially similar or identical causes of action and issues, parties and relief sought [and a] final judgment by a court

or tribunal of competent jurisdiction." Id. at 845.  Claims brought in federal court after a judicially reviewed DCR determination are therefore barred by issue preclusion where the plaintiff asserts the same basis for those claims.  Id.

Here, plaintiff filed identical complaints in his DCR matter and in this matter. (See Cert. Exs. 1 & 5).  He asserts exactly the same age based claims under the ADEA and NJLAD and asserts exactly the same factual basis for those claims. (See Cert. Exs. 1 & 5).  After an extensive investigation, the DCR determined that no probable cause existed to establish that the University had engaged in age based discrimination of retaliatory conduct. (See Cert. Ex. 6).  The Superior Court of New Jersey - Appellate Division affirmed the no probable cause finding of the DCR and entered a detailed opinion on these matters.(See Cert. Ex. 7).  As plaintiff's identical claims have been previously judicially reviewed by the Superior Court of New Jersey - Appellate Division, he is barred by issue preclusion from litigating them before this court. Therefore, plaintiff's ADEA and LAD claims should be dismissed with prejudice.

**IV.     PLAINTIFF'S   NEW   JERSEY   LAW   AGAINST DISCRIMINATION   CLAIMS   SHOULD   BE   DISMISSED BECAUSE THEY ARE STATUTORILY BARRED BY THE DCR'S DETERMINATION IN THIS MATTER.**

Plaintiff's NJLAD claims should be dismissed because they are statutorily barred. The NJLAD contains an election of remedies provision that allows an individual to choose between an administrative remedy with the DCR or civil suit; however, once an

individual elects to pursue the claim through the DCR and DCR issues
a final determination, he is barred from instituting NJLAD claims
based on the same injury in any other forum. Chugh v. W. Inventory
Serv., 333 F. Supp. 2d 285, 290 (D.N.J. 2004). Specifically, N.J.
Stat. Ann. § 10:5-27 provides, in part, that the DCR's:

> "final determination therein shall exclude any
> other action, civil or criminal, based on the
> same grievance of the individual concerned."
> Id.

Plaintiff availed himself of the administrative remedies
provided for under the NJLAD. He chose to pursue his NJLAD claims
through the DCR and the DCR issued a final determination of no
probable cause. (See Cert. Exs. 5 & 6). Additionally, plaintiff
appealed that determination to the Superior Court of New Jersey -
Appellate Division, which affirmed the DCR's determination. (See
Cert. Ex. 7). Plaintiff is statutorily barred from instituting an
LAD action in any other forum, including this one. Accordingly,
plaintiff's NJLAD claims should be dismissed with prejudice.

## CONCLUSION

Accordingly, it is respectfully requested that plaintiff's ADEA and NJLAD claims be dismissed with prejudice.

Respectfully submitted,

PAULA T. DOW
ATTORNEY GENERAL OF NEW JERSEY

By:    s/Ryan C. Atkinson
       Ryan C. Atkinson
       Deputy Attorney General

Dated: October 14, 2010

24