NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| MUSTAFA BOSTANCI, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 08-4339 (SRC) |
| | : | |
| v. | : | **OPINION & ORDER** |
| | : | |
| NEW JERSEY CITY UNIVERSITY, | : | |
| | : | |
| Defendant. | : | |

**CHESLER, U.S.D.J.**

This matter comes before the Court on the motion to dismiss the Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), by Defendant New Jersey City University ("NJCU"). For the reasons that follow, the motion to dismiss, now converted to a motion for summary judgment, will be denied.

Very briefly, this case arises from an employment dispute. The Complaint alleges that Plaintiff had been employed by NJCU, and that NJCU harassed, retaliated, and discharged him on account of his age. On August 29, 2008, Plaintiff filed the Complaint in this action, asserting eight counts of discharge, retaliation, and harassment in violation of the New Jersey Law Against Discrimination ("LAD"), the Age Discrimination in Employment Act ("ADEA"), and Title VII of the Civil Rights Act of 1964 ("Title VII"). On August 11, 2009, this Court dismissed the claims under Title VII. Defendant now moves to dismiss the remaining claims in the Complaint.

Defendant moves to dismiss solely on the ground that NJCU is immune from suit due to

sovereign immunity. "Whether a public university is entitled to Eleventh Amendment immunity is a fact-intensive review that calls for individualized determinations." Bowers v. NCAA, 475 F.3d 524, 546 (3d Cir. 2007). The parties' briefs on the motion to dismiss relied on factual matters outside the pleadings. Because of this, on October 10, 2010, this Court Ordered that the motion to dismiss be converted to a motion for summary judgment, pursuant to Federal Rule of Civil Procedure 12(b), and provided for additional briefing. Thus, this Court now has before it a motion for summary judgment.

The motion for summary judgment turns on the question of whether NJCU is a state entity, immune from suit in federal court. The Third Circuit applies the following test to this issue:

> We have adopted a three-part test to apply in order to determine whether an entity is an arm of the state for Eleventh Amendment purposes. That test examines the following three elements: (1) whether the payment of the judgment would come from the state; (2) what status the entity has under state law; and (3) what degree of autonomy the entity has.

Id. at 546. These are referred to as the Fitchik factors. Fitchik v. New Jersey Transit Rail Operations, Inc., 873 F.2d 655 (3d Cir. 1989). The Court decides questions of Eleventh Amendment immunity as a matter of law. Skehan v. State System of Higher Education, 815 F.2d 244, 246 (3d Cir. 1987).

"[T]he party asserting Eleventh Amendment immunity bears the burden of proving entitlement to it." Christy v. Pennsylvania Turnpike Comm'n, 54 F.3d 1140, 1144 (3d Cir. 1995). NJCU has not persuaded this Court that it is entitled to the immunity that attaches to state entities.

As to the first Fitchik factor, the question is whether the State of New Jersey is obligated

to pay a judgment against NJCU.  Significantly, NJCU does not claim that the State is obligated to pay a judgment against NJCU.  Rather, NJCU contends that "defendant does not have the ability to satisfy a judgment from these funds and any judgment would in fact come from the State of New Jersey." (Def.'s Supp. Br. 13.)  This assertion misses the point.  The Supreme Court has stated that the question at issue is "whether a money judgment against a state instrumentality or official would be enforceable against the State." Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 430 (1997).  Even if it is true that the funds for any judgment would, one way or the other, end up coming from the State of New Jersey, that does not mean that a money judgment against NJCU would be enforceable against the State of New Jersey.

> The Third Circuit has consistently rejected arguments similar to that made by NJCU:
>
> The University argues that it will be required to pay indirectly any judgment against it because the State of Iowa will be required to increase appropriations to the University to compensate for the judgment.  The appropriate question to ask, however, is whether the State is obligated to pay or reimburse the University for its debts.  As we recently explained in *Febres* in rejecting a similar indirect liability argument, if a State is not under a legal obligation to satisfy a judgment, then any increase in expenditures in the face of an adverse judgment is considered a voluntary or discretionary subsidy not entitled to Eleventh Amendment protections.

Bowers, 475 F.3d at 547 (citation omitted).  NJCU has failed to show that the State of New Jersey bears an obligation to pay a judgment against it.[1]  The first factor does not weigh in favor of finding that NJCU is entitled to Eleventh Amendment immunity.

As to the second Fitchik factor, the Third Circuit has stated:

The second *Fitchik* factor requires that we focus on whether the State itself

---

[1] Moreover, as Plaintiff notes, the relevant statute expressly states that the board of trustees of a state college may borrow money, provided that the borrowing shall not constitute a debt of the State.  N.J.S.A. § 18A:64-6(t).

3

> considers the entity an arm of the state. Under the second factor, we look to how state law treats the entity generally; whether the entity can sue or be sued in its own right, whether the entity is separately incorporated, and whether the entity is immune from state taxation.

Id. at 548. As to these points, NJCU argues: 1) NJCU has been established and named pursuant to state statutory authority; 2) NJCU is a state agency allocated to the Department of State, pursuant to N.J.S.A. § 18A:3B-27; 3) the State has not given NJCU the authority to sue and be sued; 4) NJCU is not separately incorporated under state law; and 5) NJCU is immune from state taxation.

As to NJCU's citation of N.J.S.A. § 18A:3B-27, that section, read in its entirety, works more against a finding of Eleventh Amendment immunity than for it:

> For the purposes of complying with the provisions of Article V, Section IV, Paragraph 1 of the New Jersey Constitution, any State institution of higher education which was allocated to the Department of Higher Education or other department of State government shall be allocated to the Department of State upon the effective date of this act. Notwithstanding this allocation, any such institution shall be independent of any supervision or control of the Department of State or any board, commission or officer thereof and the allocation shall not in any way affect the principles of institutional autonomy established in this act.

Thus, the statute makes clear that NJCU is not a typical state agency, like the Department of Agriculture, for example. The statute expressly states that, notwithstanding the allocation of these institutions to the Department of State, the institution is not under the supervision or control of the State. Whether viewed in connection with the second Fitchik factor or the third, this weighs against finding that NJCU is entitled to Eleventh Amendment immunity.

While NJCU contends that it is not separately incorporated under state law, this is inconsistent with N.J.S.A. § 18A:64-6(a), which gives the board of trustees of a state college "the power and duty to: . . . Adopt and use a corporate seal." The power to adopt and use a corporate

4

seal necessarily implies independent corporate status – otherwise, it makes no sense.

Viewing these factors as a whole, it appears that NJCU does have a special status as an entity affiliated with the State of New Jersey. It is true that NJCU, under a previous name, was created by the State of New Jersey, that it is recognized as a state university in N.J.S.A. § 18A:64-45, that no statutory provision expressly gives it the authority to sue and be sued in its own name, and that it is immune from state taxation. Nonetheless, this must be viewed against the background of state legislation during the past 25 years.

In 1986, the New Jersey legislature enacted the State College Autonomy Laws, which established a transfer of governance from the State to the boards of trustees of the state colleges.[2] In 1994, the state legislature enacted the Higher Education Restructuring Act of 1994, which eliminated the state Department and Board of Higher Education, increasing the authority of state college governing boards. Id. Thus, the Trustees' Reference Guide published by the New Jersey Association of State Colleges and Universities states that the result of the past 25 years of legislation is that state "colleges have been transformed into colleges and universities with a high degree of self-governance." Id. at 1. This legislative history strongly suggests that the State of New Jersey views NJCU as an affiliated but autonomous entity, and not as an arm of the State.

Considering the elements comprising the second factor as a whole, while the State appears to recognize NJCU as having a special status as a state-affiliated entity, the State does not appear to consider NJCU an arm of the State.

The decision as to the third factor, the degree of autonomy of the entity, follows

---

[2] New Jersey State College/University Trustees' Reference Guide at 5 (6th ed. 2006), http://www.njascu.org/2006%20Reference%20Guide%20Web%20version.pdf ("Trustees' Reference Guide").

straightforwardly from the discussion of the second factor. NJCU contends that its autonomy is "minimal at best." (Def.'s Supp. Br. 17.) On this record, this Court does not agree. Rather, NJCU appears to enjoy a high degree of autonomy. The statute which states the powers of the boards of trustees of state colleges, N.J.S.A. § 18A:64-6, gives such boards broad powers to manage and govern their institutions, including the power of eminent domain, as well as fully autonomous control over moneys appropriated to the college by the legislature. The fact that trustees are appointed by the Governor, and may be removed for cause by the Governor, does not negate the considerable degree of autonomy provided by the relevant authorizing statutes – not surprising, given that the legislation was known as the "State College Autonomy Laws."

This inference is further supported by this preamble language to the Higher Education Restructuring Act of 1994:

> The Legislature finds and declares that:
> 
> a. the institutions of higher education are one of the most valuable and underutilized resources in the State; and
> 
> b. the elimination of unnecessary State oversight and its accompanying bureaucracy will serve to unleash the creativity and innovation of these institutions . . .
> 
> e. in order to provide institutions with the ability to fulfill their mission and Statewide goals, greater decision making and accountability must be placed at the institutional level . . .

1994 N.J. Laws 48 at 2. Certainly, the intent of the legislature is crystal clear – the elimination of unnecessary State oversight. It is difficult to square this with NJCU's claim that its autonomy is minimal. It appears that the New Jersey legislature has put considerable effort into increasing the autonomy of the state colleges over the past 25 years. The third factor, the degree of autonomy

of NJCU, weighs against a finding of Eleventh Amendment immunity.

Weighing the three Fitchik factors together, this Court finds little to support a finding that NJCU is entitled to Eleventh Amendment immunity. Rather, the three factors weigh in favor of finding that the State of New Jersey does not consider NJCU to be an arm of the state.

A review of the relevant cases supports this determination. This Court finds these five cases to be particularly relevant: Skehan, 815 F.2d at 244 (finding Pennsylvania State System of Higher Education entitled to Eleventh Amendment immunity); Kovats v. Rutgers, State University, 822 F.2d 1303 (3d Cir. 1987) (Rutgers not entitled to Eleventh Amendment immunity); Fuchilla v. Layman, 109 N.J. 319 (1988) (UMDNJ not entitled to Eleventh Amendment immunity); Fitchik, 873 F.2d at 655 (NJTRO not entitled to Eleventh Amendment immunity); and Bowers, 475 F.3d at 524 (University of Iowa entitled to Eleventh Amendment immunity). In two of these cases, Skehan and Bowers, the Court found the entity entitled to Eleventh Amendment immunity. The facts of the instant case, however, differ significantly from those of both Skehan and Bowers.

Skehan concerned the Pennsylvania State System of Higher Education, on a theory that this entity was liable for actions at Bloomsburg State College, a constituent institution. Among the many differences from the instant case are the facts that Pennsylvania courts had a history of finding Pennsylvania state colleges to be entitled to sovereign immunity, and that the statute which created the State System expressly preserved all existing rights of the member institutions. 815 F.2d at 248. Here, in contrast, there is neither a history of finding New Jersey state colleges to be entitled to Eleventh Amendment immunity, nor statutory language preserving any such right.

7

The facts in <u>Bowers</u> also differ sharply from the instant case. Among other things, the University of Iowa was created by the state constitution and was the only constitutionally-created university in that state, the University had no corporate existence separate from the state, the constitution required that all of the University's funds and lands be under the control and management of the state, Iowa state law considered the University to be a state agency, and the University could only file suit through the State Attorney General's office. 475 F.3d at 548. No analogous facts are present here. Moreover, as to the autonomy factor, the Third Circuit found that the University was "tightly controlled by the State of Iowa." <u>Id.</u> at 549. In contrast, in the instant case, N.J.S.A. § 18A:3B-27 states that, notwithstanding the allocation of institutions like NJCU to the Department of State, such institutions are independent of that Department's control and supervision.

The facts of the instant case are much closer to <u>Kovats</u>, <u>Fuchilla</u>, and <u>Fitchik</u>, in which the entities had a special affiliation with the state but had significant autonomy and separate corporate existence. Considering the <u>Fitchik</u> factors, NJCU seems more similar to Rutgers and UMDNJ than to the University of Iowa. This Court's decision today is consistent with these precedents.

Defendant has failed to meet its burden of proving to this Court that it is entitled to Eleventh Amendment immunity. Defendant's motion to dismiss, converted to a motion for summary judgment, will be denied.

For these reasons,

**IT IS** on this 1st day of December, 2010,

**ORDERED** that Defendant's motion to dismiss (Docket Entry No. 66) for failure to state

a valid claim for relief, converted to a motion for summary judgment, is **DENIED**.


   /s Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge